

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00049-CR

CAVIN ANTHONY LUDWIG, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 23,177-C, Honorable Ana Estevez, Presiding

March 18, 2014

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Cavin Anthony Ludwig, appeals from his conviction for the offense of aggravated assault with a deadly weapon[1] and resulting sentence of confinement for ten years in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant brings forward two issues on appeal. First, appellant contends that the trial court committed reversible error when it denied his motion for a mistrial. Second, appellant contends that the trial court erred in denying his motion for a new

---

[1] See TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

trial. For the reasons expressed herein, we disagree with appellant and will affirm the judgment of the trial court.

## Factual and Procedural Background

Appellant has not contested the sufficiency of the evidence to support the jury's verdict; therefore, we will only address the factual background necessary for our analysis of the issues presented.

Appellant was charged by indictment with intentionally and knowingly causing bodily injury to Annmarie Caine, by stabbing her with a knife. Further, the indictment alleged that appellant did use and exhibit a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury.

On January 26, 2012, Amarillo police were called to Caine's apartment in reference to a domestic dispute. At that time, appellant and Caine were living together. After some initial investigation, it was determined that there had been an argument between the two parties and Caine had suffered some bruising of her arm. Appellant was asked to leave the apartment and did so. No further action was taken.

Subsequently that evening, appellant was contacted by Caine and invited back to the apartment. Once appellant and Caine reunited at the apartment, another argument ensued. Appellant had been drinking throughout the day, and, after the argument began anew, appellant decided to leave. When appellant started to leave, he attempted to take beer that Caine had purchased earlier in the day. This resulted in an escalation of the argument.

In an ensuing physical confrontation and scuffle, appellant and Caine ended up in the kitchen of the apartment. It was at this point that appellant initially stabbed and strangled Caine. As a result of being stabbed and strangled, Caine lost consciousness. When Caine regained consciousness, she realized that appellant had stabbed her several more times. According to Caine's testimony, it was as she was regaining consciousness that appellant also sexually assaulted her.

Appellant stayed at the apartment with Caine after the assault. Upon awakening the following morning, she found that she had a significant amount of blood on her body and all over the bedding. Appellant refused to allow Caine to be alone; however, she was allowed to shower and dress.

Later that day, Caine convinced appellant to allow her to visit with her mother at the mother's residence. As Caine explained, this would have been her normal practice and, if she did not go to her mother's residence, she was afraid her mother would come to the apartment. Appellant went with her to her mother's residence and the visit went without any problems. Appellant and Caine returned to her apartment later in the day on the 27th of January.

It was not until three days later that Caine finally contacted law enforcement officials regarding the assault. She received medical attention for her stab wounds and the police officers investigating the offense documented the injuries with pictures. At the same time, the police took pictures of the bruises to appellant's body and the strangulation marks to her neck. During this investigation, the police also documented

the presence of blood in the kitchen, bedroom, and on the bedding. The officers arrested appellant at the scene.

During the trial, Officer Michael Morrison of the APD was called to testify. Morrison testified about his observations at the apartment and his discussion with appellant about how Caine had been injured. Specifically, Morrison testified about noting the blood on the bed sheets as well as at other places around the apartment. Eventually, Morrison came to the conclusion that appellant was the perpetrator of the assault. Morrison decided to arrest appellant. It was during his arrest of appellant at the crime scene that Morrison had a conversation with appellant. This conversation with appellant led to the complained-of motion for mistrial.

Prior to Morrison's testimony, the State advised the trial court that there needed to be a hearing out of the presence of the jury regarding a portion of the officer's testimony. Out of the presence of the jury, Officer Morrison testified that once he decided to arrest appellant, he read appellant his "*Miranda*"[2] rights to him and appellant refused to make any further statements. The parties agreed that there would be no mention of appellant's invocation of his right to remain silent or to speak with an attorney.

However, in front of the jury, the following occurred:

Q: So you placed Cavin under arrest.
A: Correct
Q: And was he questioned any more after that?

---

[2] *See Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

A: At that point we did read him his Miranda Rights because he was under arrest, and his Miranda Rights were read. And he did not want to waive his right and advised us he would like to speak to a lawyer.

Appellant then lodged an objection that the answer violated the agreement and the court's order regarding mentioning appellant's invocation of his right to remain silent and his right to speak to an attorney. The trial court excused the jury at this point. The trial court sustained the objection of appellant to the response given by Morrison. Thereafter, appellant moved for a mistrial.

The trial court and counsel for appellant and the State had a lengthy discussion about the proper steps to be taken. At the end of the discussion, the trial court recessed for the evening with instructions for the attorneys to brief the issue of what the trial court's response to the motion for a mistrial should be.

The following morning the trial court decided to overrule the motion for mistrial and to instruct the jury to disregard the previous answer given by Morrison. The jury was returned to the courtroom, and the trial court gave the following instruction:

Ladies and gentlemen, every citizen placed under arrest or accused of a crime possesses a fundamental right to remain silent and a right to an attorney. These rights are guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under Article 1, Sections 10 and 19 of the Texas Constitution, and by statutory law. These fundamental rights are rendered meaningless and of no value if a witness for the State comments upon or alludes to a citizen's choice to exercise his or her right. To the extent that the witness for the State has commented upon, alluded to, or testified on matters concerning a citizen's exercise of his or her right to remain silent or a right to an attorney, you are hereby instructed that such reference by the State's witness was improper, and as such you must disregard it and you shall give it no weight or consideration whatsoever.

Appellant again moved for a mistrial, which the trial court denied.

The trial continued, and, at the conclusion of the evidence in the guilt/innocence phase, the jury found him guilty of the indicted offense. The same jury heard the punishment evidence and assessed a sentence of confinement for ten years in the ID-TDCJ.

Appellant subsequently filed a motion for new trial. The allegations in the motion for new trial contend that the State had violated the precepts of *Brady v. Maryland.*[3] Specifically, appellant contends the State withheld evidence favorable to the defendant. At issue is the testimony of Tiffani Green. Green testified during the trial that, sometime during late January 2012, she received a phone call from appellant wherein he told her that "he might be going down for attempted murder."

Earlier, during Caine's testimony, she recalled for the jury that, at some point during the assault when she regained consciousness, she heard appellant talking to Green, a woman Caine knew only by name as a friend of appellant. She overheard appellant tell this woman that "he was about to go down for attempted murder."

According to appellant, there was more to Green's testimony. Specifically, appellant points to Green's trial testimony where she stated that, during her phone conversation with appellant when he advised he might be going down for attempted murder, she heard a woman's voice requesting that 911 emergency services be contacted. During appellant's cross-examination of Green during trial, he asked if the woman sounded distressed and she replied no, that the voice did not sound distressed.

---

[3] *See* 373 U.S. 83, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1963).

This question was asked twice, and each time Green denied that the woman sounded distressed.

Later, Green testified to what would be the essence of appellant's *Brady* claim: that she had advised the State, through its investigator, Bill Redden, that at the time of the telephone conversation regarding the 911 call, she heard laughing on the other end of one of the telephone conversations. Appellant alleges that Redden specifically instructed Green not to mention the fact of hearing laughing during her testimony because it was not important. Appellant contends that this evidence was favorable to appellant and material to the defense and that disclosure would have, in reasonable probability, resulted in a different outcome at the trial of appellant's case.

During the hearing on the motion for new trial, appellant called the State's investigator Redden as a witness. Redden testified that Green had in fact mentioned hearing laughing during the conversation with appellant; however, according to Redden, Green was not able to state whether the laughing was a female or male voice. Redden further testified that he discussed this matter with Green on two or three occasions and Green was never able to identify the laughter as female or male. When asked by appellant whether he had ever advised Green not to mention the laughter, Redden denied making that suggestion.

Green's testimony at the motion for new trial hearing was that she had identified the laughter as coming from a female voice. Further, Green testified that Redden had advised her not to mention the laughter and that neither attorney was going to question her about it.

After hearing the testimony of the witnesses at the motion for new trial hearing, the trial court received memoranda from both the appellant and the State. Following the receipt of the memoranda, the trial court entered an order denying the motion for new trial. There were no formal findings of fact or conclusions of law entered by the trial court; however, when making a statement which directed the attorneys to the issues the trial court wished to be presented in their respective memoranda, the trial court stated that it believed Redden's testimony.

Appellant now brings two issues before the Court. In these issues appellant contends that the trial court committed reversible error in denying the motion for mistrial and in denying the motion for new trial. Disagreeing with appellant, we overrule appellant's issues.

## Motion for Mistrial

We begin by noting that appellant's position seems to be that we must go directly to the issue of whether the action of denial of the motion for a mistrial was a constitutional error and accordingly view the action of the trial judge in the prism of rule 44.2(a) of the Texas Rules of Appellate Procedure for evaluation of harm. *See* TEX. R. APP. P. 44.2(a). However, such an approach overlooks the initial question of whether the trial court committed error in denying the motion for mistrial. As stated by the Texas Court of Criminal Appeals in *Archie v. State,* the only adverse ruling that appellant can be objecting to is the denial of the motion for mistrial because the trial court sustained the objection and instructed the jury to disregard the answer of the officer. *See Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011).

8

Standard of Review and Applicable Law

As an appellate court, we review the denial of a motion for mistrial under an abuse of discretion standard. *See id. at* 738–39 (citing *Hawkins v. State,* 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) (en banc)). When evaluating the conduct of the trial court in denying the motion for a mistrial, we apply the three *Mosley* factors which balance: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Hawkins,* 135 S.W.3d at 75 (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc) (op. on reh'g)).

We note that mistrial is viewed as an extreme remedy that is reserved for a very narrow classification of circumstances involving highly prejudicial and incurable errors. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Mistrial is to be used to halt proceedings when the error involved makes the expenditure of further time and expense wasteful and futile. *See id.* A trial court's decision to deny a motion for mistrial will be upheld when, if viewing the evidence in the light most favorable to the denial, it was within the zone of reasonable disagreement. *See id.*

When the trial court gives a prompt instruction to disregard the testimony at issue, this ordinarily will cure any prejudice arising from the testimony. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (en banc) (per curiam). We further presume that the jury followed the trial court's instruction to disregard. *See Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000) (en banc).

<u>Analysis</u>

We now turn to the task of applying the *Mosley* factors to the facts of this case. The first factor is the severity of the misconduct, which is to say the magnitude of the prejudicial effect of Officer Morrison's statement. *See Archie,* 340 S.W.3d at 739. There can be no doubt that a comment on the appellant's assertion of his right to remain silent or right to speak to an attorney is significant. *See Canales v. State,* 98 S.W.3d 690, 695 (Tex. Crim. App. 2005) (addressing in-court remarks arguably directed toward a defendant's right to remain silent); *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991) (addressing in-court evidence of accused's invocation of right to counsel). However, the fact that these are significant constitutional issues is not the end of the inquiry under the first *Mosley* factor. As the Texas Court of Criminal Appeals held in *Archie*, it is the "severity" or "magnitude" of the prejudice they likely caused. *Archie,* 340 S.W.3d at 741. In analyzing the "severity" or "magnitude" of the prejudice, we look at the context of the statement and whether the statement was ever referred to during the balance of the trial. As to the context, the question asked did not inherently call for the response, nor was the response allowed to go unaddressed. Immediately, the trial was halted and the jury was retired while the trial court attempted to craft the appropriate response. Lastly, a complete and extremely thorough instruction was given to the jury to disregard the statement. This was the next thing that the jury heard after the untoward statement by the officer. Finally, there was never another mention by the State or any of the State's witnesses about appellant's request to remain silent and talk to an attorney. For these reasons, we do not feel that the single utterance by the

witness caused such an extent of prejudice as to render the firm and timely curative instruction ineffective. *See id.*

The second *Mosley* factor examines the measures adopted to cure the misconduct which has been described as the "efficacy of any cautionary instruction by the judge." *See id.* at 739. Our review of the record reveals that appellant's counsel lodged an objection, in response to which the trial court stopped the proceeding, sustained the objection following a discussion out of the jury's presence, and began efforts to ascertain the proper next step. The trial court, with contribution from appellant's counsel and the State, then crafted a very explicit, pointed, and thorough instruction to the jury to disregard the statement by the witness. Further, the trial court expressly told the jury that such comment or statement was improper. Ultimately, in the court's charge on guilt/innocence, the trial court again gave the jury the same instruction. There is nothing in the record that would indicate that any attorney or witness ever mentioned the statement made by the officer. Under this fact pattern, we cannot say that the singular statement by the officer was so prejudicial or indelible as to render the curative action of the trial court ineffective. *See Ovalle*, 13 S.W.3d at 783. Likewise, there is nothing to indicate that the jury did not follow the trial court's instruction. *See Wesbrook*, 29 S.W.3d at 116.

The third *Mosley* factor considers the certainty of conviction absent the misconduct, that is to say, the strength of the evidence supporting the conviction. *Archie,* 340 S.W.3d at 739. The evidence supporting the conviction was compelling. The testimony of Caine was direct and linked only to appellant. The physical evidence, in the form of the blood stains throughout the apartment but especially on the bedding in

the bedroom, corroborated Caine's testimony. Appellant's initial statements to the officers about how Caine came to be injured were not credible nor commonsensical. Finally, Green's testimony about the unusual phone call from appellant wherein appellant stated he was about to go down for attempted murder was also quite compelling. In all, the certainty of conviction without the one erroneous statement by the officer was quite strong.

In light of our analysis of the *Mosley* factors, we do not find the denial of the appellant's motion for a mistrial to have been an abuse of discretion. *See id.* at 738–39. Accordingly, appellant's first issue is overruled.

Motion for New Trial

## Standard of Review and Applicable Law

We review the granting or denial of a motion for new trial under an abuse of discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). As the reviewing court, we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary and unreasonable. *Id.* Further, we must view the evidence in the light most favorable to the trial court's ruling and presume all reasonable factual findings that could have been made against the losing party were made. *Id.* Accordingly, a trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* The appellant's issue regarding denial of the motion for new trial is centered on his claim that the State violated the requirements of *Brady v. Maryland. See Brady*, 373 U.S. at 87.

The State is required to disclose exculpatory evidence. *See id.*; *Harm v. State* 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (en banc). The duty of *Brady* extends to impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). In order to prove a violation of the requirements of *Brady*, an appellant must show that (1) the State failed to disclose evidence, regardless of the good faith of the prosecutor; (2) the withheld evidence is favorable to the defendant, and (3) the withheld evidence is material, which means that there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *See Harm,* 183 S.W.3d at 406. However, *Brady* is not a general discovery motion. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). Nor is the State required to seek out exculpatory evidence independently on the appellant's behalf or furnish appellant with exculpatory or mitigating evidence that is fully accessible from other sources. *See Pena v. State,* 353 S.W.3d 797, 811 (Tex. Crim. App. 2011); *Harm*, 183 S.W.3d at 407; *see also Perales v. State,* No. 07-12-00290-CR, 2013 Tex. App. LEXIS 11476, at *3-4 (Tex. App.—Amarillo Sep. 5, 2013, no pet.) (mem. op., not designated for publication).

Analysis

We begin our analysis with a review of the testimony at the motion for new trial hearing. The trial court heard from two witnesses, and from the record it is clear that these are the only two witnesses with relevant facts regarding the alleged *Brady* violation. The State's investigator, Redden, emphatically denies telling Green not to mention the female laughing in the background at the time she heard the female voice say call 911. Green, to the contrary, states that Redden told her more than once that

13

the laughing female was not important and that none of the attorneys would be asking her about that. Further, Redden admits telling Green that she was not to mention her thoughts that appellant was using methamphetamine again. He also agrees that he told her that no one would be asking her about this. Green also testified that she had been instructed by Redden not to mention her thoughts that appellant was using methamphetamine again. Additionally, Redden testified that Green had consistently maintained in her discussions with him that she was not sure whether the voice she contends she heard laughing was a male or a female. Green denied having any confusion about this subject. Finally, Redden testified that Green told him that part of the reason for her uncertainty about some of these facts was that she was abusing drugs during this period of time. Green did admit that she had some confusion about events during this period due to her own drug use but denied being confused about the issue of the female laughter.

The record further reflects one other portion of the trial that enters into our consideration of appellant's *Brady* claim. The record demonstrates that appellant had consistent communication with Green from the time of the incident in question through the trial. As a result, appellant knew how to get in touch with Green and could have, had trial counsel decided to, visited with her prior to the trial. Appellant was also aware that the State was going to, and in fact did, subpoena Green to testify at his trial. Further, the record at the motion for new trial hearing indicated that appellant's trial counsel knew he could have visited with Green before she testified during the trial but, for whatever reason, choose not to do so.

14

The record reflects one more salient fact. At the conclusion of the testimony and after hearing argument of counsel, the trial court stated that it believed Redden's testimony. Although there were no written findings of fact filed, it is important that we acknowledge the trial court's statement regarding the credibility and believability of the conflicting testimony. The fact pattern before the Court leaves us with the conclusion that the State did not know whether the "laughing" on the line was male or female or, in truth and fact, whether it existed at all. It is from these facts that we are asked to ascertain a violation of *Brady*.

An application of the standard of review to our fact pattern can lead to only one conclusion. The trial court did not abuse its discretion in denying appellant's motion for new trial. *See Charles*, 146 S.W.3d at 208. Because we are further instructed to view the evidence in the light most favorable to the trial court's ruling, we are left with the conclusion that investigator Redden's testimony was credible, believable, and, ultimately, fatal to appellant's *Brady* issue. *See id.* Next, we are further instructed that, on this record, we cannot conclude that the State failed to disclose exculpatory *Brady* material. *See Brady*, 373 U.S. at 87; *Harm,* 183 S.W.3d at 406. Further, the record affirmatively reflects that appellant knew that Green was going to be a witness against him. Appellant also continued to have consistent contact with Green through social media sites and mail. Finally, trial counsel had the opportunity to visit with Green prior to her testimony. Accordingly, appellant has not met the requirements of proving a *Brady* claim in that he has failed to demonstrate that the State failed to disclose exculpatory evidence. *See Pena,* 353 S.W.3d at 810; *Harm,* 183 S.W.3d at 406. Appellant's second issue is overruled.

15

Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


Mackey K. Hancock
Justice

Publish.


Pirtle, J., concurring.