**Opinion issued June 18, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00697-CR

## NO. 01-14-00698-CR

———————————

**DAVID SENDEJO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case Nos. 1408625 & 1408626

## MEMORANDUM OPINION

Appellant David Sendejo was charged by two indictments with aggravated assault with a deadly weapon, enhanced by a prior felony conviction of aggravated robbery. The cases were tried together and a jury found Sendejo guilty. He

pleaded true to the enhancement allegation, and the trial court assessed punishment at 65 years' confinement for each conviction and ordered that the sentences run concurrently. In two issues, Sendejo contends that (1) the evidence is legally insufficient to support his convictions and (2) the trial court erred in denying his motion for a mistrial when one of the complainants testified, in violation of the trial court's order in limine, that Sendejo had been seen with a gun on other occasions. We affirm.[1]

## Background

Aaron Franco lived in a downstairs unit of a 10-unit apartment complex. On the night of July 30, 2013, Aaron's son, Marcellino Franco, and 16 year old grandson, Angel Franco, were visiting Aaron's apartment. Around midnight, they were watching television when they heard a knock on the door.

Aaron testified at trial that he answered the door and recognized Sendejo, who had been a frequent visitor to the apartment complex in recent months, and let him in. Sendejo asked Aaron where he could find "the black guy that carries the backpack" who lived in the apartment complex. Sendejo was "very hyper" and "very agitated," but he left after Aaron told him that the man lived in unit four.

---

[1] Appellate cause number 01–14–00697–CR is the appeal from the conviction for aggravated assault of Aaron Franco (trial court number 1408625), and appellate cause number 01–14–00698–CR is the appeal from the conviction for aggravated assault of Angel Franco (trial court cause number 1408626).

A few minutes later, Sendejo returned and knocked on Aaron's door again. Sendejo told Aaron that he had looked for the man in the apartment at "the end" of the complex but no one was home. Sendejo also asked Aaron why he had lied to him. Aaron told Sendejo that the apartment at the end of the complex was unit five, and he had directed Sendejo to unit four. Sendejo left again, presumably to look for the man who lived in unit four.

After Sendejo left, Aaron turned on his porch light. About three or four seconds later, Aaron heard the light "get slapped." Aaron opened the door, and Sendejo asked him why he "was trying to get in the middle of [his] s--t." Sendejo told Aaron that he would "come back and talk to [Aaron]."

About two minutes after Aaron closed the door, Sendejo knocked on Aaron's door a third time. Aaron opened the door halfway, and Sendejo asked to talk. When Aaron told Sendejo to leave and that they could talk later, Sendejo said, "no, we need to talk now" and attempted to push his way into the apartment. Aaron pushed Sendejo out of the apartment and closed the door. Aaron testified that as he shut the door, his grandson Angel stood up and started walking towards the door to lock it. When Angel was about halfway to the door, a bullet came through the door.

The bullet went through Angel's finger, through Aaron's left arm, and into Aaron's stomach. Aaron testified that the shot was fired almost immediately after

3

he closed the door; the amount of time that elapsed between the time he closed the door on Sendejo and the time the shot was fired was two seconds, at most. Aaron was "a hundred percent" sure that Sendejo was the shooter. Although Aaron testified that he did not see Sendejo carrying a gun, he testified that Sendejo was alone each of the three times that he came to Aaron's door.

Angel testified at trial and corroborated Aaron's testimony. Angel recognized Sendejo, whom he had seen regularly at Aaron's apartment complex. Angel testified that about five minutes passed between each time that Sendejo knocked on Aaron's door. According to Angel, Sendejo was "fidgety," agitated, and anxious the first time he knocked on the door and his agitation increased each time he returned. Angel testified that Sendejo was "a little bit more mad" when he knocked the third time and tried to "shove" his way into the apartment. Angel also testified that the shot was fired "like at the same time" that the door closed on Sendejo.

Although he did not see Sendejo holding a gun, Angel testified that he was sure that Sendejo was the shooter because "he was the only one by the door and everyone has always seen him with that gun that he's had." The trial court sustained Sendejo's objection to this statement and instructed the jury to disregard it. Sendejo moved for a mistrial, which the trial court denied.

4

Houston Police Department ("HPD") Officer R. Salas testified that he observed a bullet hole in the center of the door at waist level and that a nine-millimeter Luger shell cartridge was recovered outside of Aaron's apartment. Officer Salas also testified that it takes approximately one second for a person to load a gun if he is holding the gun in his hand.

HDP Officer J. Johnston investigated the case and testified that Aaron and Angel each named Sendejo as the shooter and identified Sendejo in a photo array.

The jury rejected Sendejo's defensive theory—that someone who lived in a nearby blue house could have been the shooter—and found him guilty of both charges of aggravated assault. Sendejo timely appealed.

## Sufficiency of the Evidence

In his first issue, Sendejo contends that the evidence was legally insufficient to support his convictions because the State failed to prove an essential element of the offense—identity.

### A. Standard of Review

Evidence is insufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319,

5

99 S. Ct. 2781, 2789 (1979)). We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).

We consider direct and circumstantial evidence, and all reasonable inferences in support of the verdict that may be drawn from the evidence in making our determination. *Id.* at 778. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper*, 214 S.W.3d at 13). In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.* at 359–60 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We likewise defer to the factfinder's evaluation of the credibility of the evidence and

6

the weight to give the evidence. *Gonzalez*, 337 S.W.3d at 479 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

**B.    Applicable Law**

A person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury" to another person. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014). A person commits the offense of aggravated assault if he "commits assault as defined in [section] 22.01 and [he] . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2) (West 2011). A firearm is, per se, a deadly weapon. *See id.* § 1.07(a)(17) (West Supp. 2014). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

**C.    Analysis**

To prove Sendejo guilty of two charges of aggravated assault, the State had to prove beyond a reasonable doubt that Sendejo intentionally, knowingly, or recklessly caused bodily injury to Aaron and Angel and that he used or exhibited a deadly weapon during the commission of the assault. Sendejo contends only that there is insufficient evidence to prove identity.

The identity of the person committing the offense is an element of the crime that must be proved. *See Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.— Houston [1st Dist.] 2003, pet. ref'd) (noting defendant's identity can be proved by

7

direct or circumstantial evidence and that eyewitness identification is not necessary). We review the totality of the circumstances to determine whether there is sufficient evidence that a defendant is the individual who committed the offense. *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981). Identity may be proven by direct or circumstantial evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *see also Ford v. State*, 852 S.W.2d 641, 642 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

We conclude that sufficient evidence supports the jury's finding beyond a reasonable doubt that Sendejo was the shooter. First, Aaron and Angel each testified that the gun shot was fired immediately after Aaron closed the front door on Sendejo, and they each testified that Sendejo was alone each of the three times that Sendejo came to Aaron's door.

Second, the evidence showed that Sendejo was agitated and argued with Aaron moments before the shooting. Aaron and Angel each testified that Sendejo became increasingly argumentative each time he came to the door and that he attempted to force his way into Aaron's apartment in the moments before the gun fired.

Third, Sendejo left the scene after the shooting. Although it is undisputed that Sendejo was outside of Aaron's apartment immediately before the shooting, he was not at the scene when the ambulance arrived minutes later. *See Brown v.*

*State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (stating that conduct of defendant subsequent to alleged commission of crime that indicates consciousness of guilt is circumstance tending to prove that defendant committed act with which he is charged); *Yost v. State*, 222 S.W.3d 865, 875 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that evidence that defendant left scene of crime reflected consciousness of guilt).

Sendejo contends that the evidence was insufficient because neither Aaron nor Angel saw Sendejo shoot a gun or even carry a gun that night. According to Sendejo, the State's failure to present an eyewitness identifying Sendejo as the shooter renders the evidence insufficient. But eyewitness identification is not required for a conviction. *Greene*, 124 S.W.3d at 792 (eyewitness identification is not necessary to identify perpetrator).

Sendejo also points out that the jury could have concluded that he was not the shooter based on evidence that a person living in a nearby blue house could have been the shooter. The jury implicitly rejected Sendejo's defensive theory, and we must defer to the jury's resolution. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012) (appellate court presumes jury resolved conflicting evidence in favor of verdict and defer to that determination); *Henson v. State*, 388 S.W.3d 762, 773 (Tex. App.—Houston [1st Dist.] 2012) ("verdict of guilty is an

implicit finding rejecting the defendant's [defensive] theory"), *aff'd*, 407 S.W.3d 764 (Tex. Crim. App. 2013).

Viewing the evidence in the light most favorable to the verdicts, we conclude that a rational juror could have found beyond a reasonable doubt that Sendejo intentionally, knowingly, or recklessly caused bodily injury to Aaron and Angel while using a deadly weapon. Accordingly, we hold the evidence was legally sufficient to support the convictions. *See Gardner*, 306 S.W.3d at 285–86 (circumstantial evidence sufficient to prove appellant was shooter in capital murder case even though no eyewitness testimony); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("Proof of the accused's identity through circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence, as both are equally probative."); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (State may prove identity with circumstantial evidence).

We overrule Sendejo's first issue.

## Motion for Mistrial

In his second issue, Sendejo contends that the trial court abused its discretion in denying his motion for mistrial. He contends that Angel's statement that everyone has always seen Sendejo with a gun caused harm that could not have been cured by instructing the jury to disregard the statement.

## A. Standard of Review and Applicable Law

A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is required only in extreme circumstances where the prejudice is incurable. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

Generally, an instruction to disregard impermissible testimony cures any prejudicial effect. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer . . . ."); *Delacerda v. State*, 425 S.W.3d 367, 388–89 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (same). We determine whether a trial court abused its discretion by denying a mistrial by balancing the three *Mosley* factors: (1) the severity of the misconduct or the magnitude of the prejudicial effect, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *see Ludwig v. State*, 428 S.W.3d 344, 351 (Tex. App.—Amarillo 2014, no pet.) (applying *Mosley* factors to determine whether trial court abused its discretion in denying mistrial motion where witness's testimony was improper); *Delacerda*, 425 S.W.3d at 388 (same).

11

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). An appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Wead*, 129 S.W.3d at 129.

**B.      Analysis**

Applying the *Mosley* factors to this case, we conclude that the trial court did not abuse its discretion by denying Sendejo's motion for mistrial. Under the first *Mosley* factor, we evaluate the severity of the misconduct or the magnitude of the prejudice it likely caused. *Ludwig*, 428 S.W.3d at 351 ("In analyzing the 'severity' or 'magnitude' of the prejudice, we look at the context of the statement and whether [it] was referred to during the balance of the trial.").

Here, Angel's statement was not so extreme, manifestly improper, or prejudicial as to render it incurable by instruction. The complained-of testimony was brief, constituted only a small part of Angel's testimony, and was neither repeated in testimony nor referred to during closing argument. We also note that the prosecutor's question did not call for the complained-of response—in other words, the record reveals no misconduct by the State. *See Hawkins*, 135 S.W.3d at 83 (noting under first *Mosley* factor that improper statement was isolated incident); *Ludwig*, 428 S.W.3d at 350–51 (first *Mosley* factor weighed against mistrial

12

because State's question did not inherently call for complained-of response and statement was not repeated or mentioned by State); *Delacerda*, 425 S.W.3d at 389 (trial court did not abuse its discretion in denying mistrial where police investigator's statement was brief and State did not emphasize or assert it during closing argument).

Under the second *Mosley* factor, we consider the measures adopted to cure the misconduct. *Mosley*, 983 S.W.2d at 259. Here, after sustaining Sendejo's objection, the trial court promptly instructed the jury orally to disregard the statement. The law generally presumes an instruction to disregard and other cautionary instructions will be obeyed by the jury. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011). And the Court of Criminal Appeals has held that "[o]rdinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle*, 13 S.W.3d at 783; *see Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) ("I[t] is well-settled that testimony referring to or implying extraneous [bad acts] can be [cured] by an instruction to disregard . . . .").

Under the third *Mosley* factor, we consider the certainty of conviction without the misconduct. *See Mosley*, 983 S.W.2d at 259. It is undisputed that Sendejo was at the scene immediately before the shot was fired. And Aaron and Angel each testified that Sendejo was angry and had attempted to push his way

13

into Aaron's apartment. They also testified that the shot was fired almost immediately after Aaron shut the door on Sendejo and that no other person was on the porch at that time. This is strong evidence of guilt.

Balancing the *Mosley* factors, we hold that the trial court did not abuse its discretion by denying Sendejo's motion for mistrial. *See Rojas v. State*, 986 S.W.2d 241, 250–51 (Tex. Crim. App. 1998) (trial court's instruction to disregard cured any error by State's witness testifying that appellant exhibited "past anger" and "past violence"); *Alexander v. State*, 229 S.W.3d 731, 743–44 (Tex. App.— San Antonio 2007, pet. ref'd) (trial court did not abuse its discretion in denying mistrial in capital murder case where State's witness stated that appellant was "always talking about how she has access to guns and drugs" because trial court instructed jury to disregard and statement was isolated reference that was not repeated during trial); *Banks v. State*, 955 S.W.2d 116, 119 (Tex. App.—Fort Worth 1997, no pet.) (per curiam) (trial court's instruction to disregard rendered error harmless in murder case where prosecutor asked appellant's girlfriend if she had seen appellant with gun and she answered "Not that weekend [of the shooting]" because State did not pursue questioning after objection was sustained and record showed State was not attempting to taint outcome of trial).

We overrule Sendejo's second issue.

## Conclusion

We affirm the judgments of the trial court.


                                                    Rebeca Huddle
                                                    Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).