# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00268-CR

### Darrel Gene Holloway, II, Appellant

### v.

### The State of Texas, Appellee

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 80649, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Darrel Gene Holloway, II, was charged with the offenses of felony murder, failure to stop and render aid, intoxication manslaughter, and aggravated assault, and the indictment further alleged that Holloway previously had been convicted of two felony offenses for driving while intoxicated. *See* Tex. Penal Code §§ 19.02(b), 22.02(a), 49.08(a); Tex. Transp. Code § 550.023. The jury convicted Holloway of all four offenses, and Holloway pleaded true to the enhancement allegations. *See* Tex. Penal Code § 12.42. At the end of the punishment phase, the jury sentenced Holloway to life imprisonment for the felony-murder, intoxication-manslaughter, and aggravated-assault counts and to thirty years' imprisonment for the failure-to-stop-and-render-aid count. In six issues on appeal, Holloway contends that the trial court erred by submitting an erroneous jury charge for the felony-murder count, refusing to include an instruction for mistake of fact for the failure-to-stop-and-render-aid count, admitting into evidence a lab report containing his blood-alcohol concentration, overruling his objection to an

improper question by the State, overruling his objection to an improper closing argument by the State, and denying his motion for mistrial. We will affirm the trial court's judgments of conviction for felony murder and intoxication manslaughter, modify the judgment for aggravated assault and affirm it as modified, reverse the trial court's judgment of conviction for failing to stop and render aid, and remand the case for further proceedings.

## BACKGROUND

A few months before the alleged offenses, Holloway began dating Maria Marta Garza, who went by the name Marta. After Marta moved in with Holloway, Marta's adult son Danny Garza and his two young children moved in with the couple. On March 2, 2018, Holloway finished a construction job, picked up Marta in his truck, went to two bars with her, stopped at a grocery to pick up some beer, and then headed home. Contemporaneously, Danny was working at a restaurant. While working, he received a call from the mother of one of his children, who relayed some upsetting news to him. After receiving the news, Danny left work, called a friend of his, and asked her to drive him to find Holloway. Danny and his friend saw Holloway and Marta in Holloway's truck and indicated that they wanted Holloway and Marta to pull over. Holloway pulled into the parking lot of a closed business a few blocks from his home, and Danny got out of his friend's car.

The events that occurred next are disputed. However, what is not disputed is that Marta got out of the truck after the interaction between Danny and Holloway began and that Danny and Marta were both run over by Holloway's truck and quickly died from the grievous injuries that they sustained. After seeing the encounter, witnesses called 911 and attempted to

2

help Danny and Marta. Similarly, multiple police officers and EMS personnel also attempted to help after responding to the 911 calls.

Following the encounter, Holloway drove to the police station and spoke with multiple police officers. After the police officers developed reason to believe that Holloway was intoxicated and after Holloway refused to submit to field-sobriety testing or provide a sample of his breath for testing, the officers obtained a warrant for a sample of his blood for alcohol testing. The officers drove Holloway to a nearby hospital where a nurse took a sample of his blood at 1:21 a.m., and the blood was later submitted for alcohol testing. Following his arrest, Holloway was charged with felony murder, failure to stop and render aid, intoxication manslaughter, and aggravated assault.

During the State's case, numerous witnesses testified, including police officers who responded to the scene and participated in the investigation in the case, an accident reconstructionist, witnesses who were near the scene on the night in question, the friend who drove Danny that night, the mother of one of Danny's children who called Danny that night, the nurse who took a sample of Holloway's blood, the medical examiner who performed autopsies on Danny and Marta, and the forensic scientist who performed testing on Holloway's blood. When presenting his case, Holloway elected to testify.

An individual at a family member's house a couple of blocks from the parking lot testified that he saw the truck run over a man and a woman, that the truck hit the woman first, that the truck backed up and then ran over the man and woman multiple times, and that the truck then sped off. A witness who lived across the street from Holloway and was a couple of blocks from the incident testified that Danny was in front of Holloway's truck, that Danny started yelling at Holloway, that Danny threw something at Holloway's truck, and that Holloway

3

went "back and forth, repeatedly running over" Danny and Marta "and killing" them. An individual who was walking on the street near the incident explained that a woman was in front of the truck; that a man was on the driver side of the truck; that the man threw something at the truck; that the truck drove forward over the woman; that the truck backed up and pulled the woman's body backwards to the edge of the parking lot; that the man went toward the woman after she had been hit; that the truck then drove forward again, struck the man, and knocked him into the road; and that the truck then drove off. Another person in the vicinity at the relevant time testified that he heard someone say, "He's killing her." Another witness who lived near the scene stated that he heard yelling, that he saw a man outside the truck walking away with his back to the truck, that the truck followed the man before accelerating and running him over, that a woman then slapped the truck and screamed, and that the truck then backed up and ran over the woman before driving off.

Next, the friend who drove Danny that night related that Danny was upset, that Danny threatened "to beat" Holloway's "ass," that Danny swung a two-by-four at Holloway's truck when Holloway stopped in the parking lot breaking out the driver's side window, that Danny then swung at the passenger's side window, that Holloway backed up to leave when Danny was in front of the truck, and that the truck moved a short distance forward and hit Danny. Although the friend did not initially see Marta, she later saw Marta lying on the ground when the friend went to help Danny after the truck left. The friend admitted that she told the police shortly after the incident that she "thought [Holloway] was backing up to leave, but drove straight toward where Danny was standing, trying to run him down."

Multiple witnesses called 911, and one of the 911 operators related that the calls were entered into the system at around 11:42 p.m. but that she did not have information

4

regarding the timing of the individual calls. One officer testified that he arrived at the scene around 11:50 p.m.[1] The time stamps from a police dashboard camera recording that was admitted into evidence indicated that one of the officers responded to the scene around 11:15 p.m., and the time stamp for the security footage from a nearby business showed that the incident occurred at approximately 11:00 p.m. Another officer's body camera time stamp documented that Holloway arrived at the police station at approximately 11:30 p.m., and an officer who was at the station similarly testified that he interacted with Holloway at around 11:30 p.m.

Several officers who were at the police station testified that Holloway was slurring his words, had urinated on himself, smelled like alcohol, and had red eyes. A search of Holloway's truck revealed empty beer cans and bottles as well as unopened beers on the floorboard. An officer testified that a sample of Holloway's blood was collected at 1:21 a.m. after the police obtained a warrant for the sample. The forensic scientist who tested the blood explained that Holloway had a blood-alcohol concentration of 0.109 when the sample was taken, that the result was above the legal limit, and that Holloway would have been in the elimination phase of alcohol metabolization for at least an hour if he did not drink any more alcohol after 11:25 p.m.

The accident reconstructionist testified that the truck driver made an intentional turn and struck Danny and that the truck "went up and over the top of him and drug him for at least" six feet before the man was deposited "by the edge of the curb." Regarding Marta, the accident reconstructionist explained that she was struck while the truck was traveling in reverse, that she was dragged on concrete, and that she ended up being stuck underneath the truck before

---

[1] One officer testified that he responded to the scene at 10:25 p.m., but that testimony is inconsistent with the testimony and other evidence concerning the timing of the incident.

5

being dislodged. Regarding the possibility that Marta could have been struck while the truck was moving forward, the reconstructionist explained that the information learned as part of the reconstruction was not consistent with that possibility. Additionally, the medical examiner explained that Marta had fractures to her rib cage on the right and left sides, bruised lungs, fractured vertebrae, and a tear in the spinal cord. The medical examiner related that these injuries were fatal because they stopped Marta from breathing. Similarly, the medical examiner stated that Danny had injuries to his head, including fractures to the skull, lacerations to the brain, and a tear in the brain stem. The medical examiner opined that the brain-stem injury was rapidly fatal.

In his testimony, Holloway explained that he had been working on a construction project prior to the incident, that some concrete splattered into his eyes, and that this caused his eyes to appear red and irritated. Additionally, Holloway testified that he purchased beer on the way home with Marta and placed the unopened beer in the truck. Next, Holloway described seeing Danny and Danny's friend in a car before the car sped up and cut in front of him. Holloway stated that he followed the car into a parking lot because he thought something was wrong, that Danny got out of the car, that Danny started screaming, that Danny pulled out a two-by-four, and that Danny started beating the truck with the board, breaking out the windows and hitting him on the cheek. When discussing Marta, Holloway said that she got out of the truck; that he thought she had run to the grocery store, a friend's house, or a nearby restaurant in search of help; and that he did not want to leave Marta behind and stayed in the area to allow Marta time to escape.

Moreover, Holloway testified that Danny went to the passenger side after Marta got out, that Danny broke the passenger window out, that Danny tried to come in through the

6

window, and that Danny knocked him out by hitting him with the two-by-four. Holloway also explained that Danny went back to the front of the truck and got onto the hood, and Holloway stated that at that point the transmission on his truck stopped working, that he could not get the truck to move forward or backward, and that the truck suddenly jumped forward by five feet, running over Danny. Holloway recalled that he needed "to get the truck off Danny," so he drove forward causing Danny to "come[] loose" but resulting in the back tires running over him. Holloway stated that he stopped the truck, got out, saw a body, started shaking, and urinated on himself. Although Holloway admitted to hitting Danny, he denied doing so on purpose and also explained that he did not see Marta, that she was not in front of the truck, that he did not realize that he hit her until the police told him later, and that during the incident he did not hear anything indicating that he hit her, which was unlike what happened when he hit Danny. Next, Holloway testified that he went to the police station to tell the police what happened. Even though Holloway admitted to drinking earlier in the day, he denied being intoxicated at the time of the incident; however, he stated that he drank a half pint of brandy in the parking lot of the police station after the incident and became intoxicated while at the police station.

After considering the evidence, the jury found Holloway guilty of all four charged crimes, and Holloway appeals his convictions.

## DISCUSSION

On appeal, Holloway argues that the trial court erred by submitting an erroneous jury charge for the felony-murder count, refusing his request for jury instructions for mistake of fact for the failure-to-stop-and-render-aid count, admitting a report showing his blood-alcohol concentration after the alleged offenses, overruling his objection to improper questioning by

7

the State, overruling his objection to improper closing argument by the State, and denying his motion for mistrial.

**Jury Instructions for Felony Murder**

When addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in any harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If an appellate court determines that there is error present in a jury charge, it must then evaluate the harm caused by the error. *See id.* The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). "When error is preserved in the trial court by timely objection, the record must show only 'some harm.'" *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). If no objection was made, as in this issue, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza*, 686 S.W.2d at 171).

The jury charge for felony murder in this case listed alternative predicate felonies serving as the basis for the charged offense: "[d]riving while intoxicated 3rd or more" or "aggravated assault." The aggravated-assault alternative did not identify the victim of the assault. The charge also included an instruction for the stand-alone aggravated-assault count, and the instructions for that count identified Marta as the victim of that offense. The language of the indictment pertaining to both counts is consistent with the language in the charge.

On appeal, Holloway contends that the jury instructions for felony murder were erroneous because the second alternative "alleged aggravated assault against an unnamed victim"

8

and argues that this instruction "was bound to confuse the jury." More specifically, Holloway argues that although no victim was included for the aggravated assault listed in the felony-murder count, the victim for that offense was supposed to be Danny Garza. Next, Holloway points to the separate count for aggravated assault and notes that the instructions for that stand-alone offense specifically listed Marta as the victim of that offense. Given that Marta was named as the victim for the stand-alone aggravated assault and that no victim was specifically listed for the aggravated assault serving as a basis for the felony-murder count, Holloway contends that the jury may have been misled into believing that Marta was the victim of the stand-alone aggravated assault as well as the aggravated assault serving as the predicate for the felony-murder charge. In other words, Holloway asserts that jury members could have believed that Holloway assaulted Marta but not Danny and then improperly concluded that Holloway committed felony murder. Accordingly, Holloway urges that the charge allowed for the conviction of felony murder without a unanimous verdict.

In response, the State argues that it was unnecessary to identify the victim of the aggravated assault serving as the basis for the felony-murder charge. As support, the State points to cases explaining that indictments charging a defendant with felony murder do not need to allege the constituent elements of the underlying predicate felony. *See Yandell v. State*, 46 S.W.3d 357, 362 (Tex. App.—Austin 2001, pet. ref'd); *see also Livingston v. State*, 542 S.W.2d 655, 658 (Tex. Crim. App. 1976) (explaining that "an indictment charging one offense during the commission of another crime need not allege the elements of the later offense"); *Kitchens v. State*, 279 S.W.3d 733, 736 (Tex. App.—Amarillo 2007, pet. ref'd) (explaining that "the specific theory of burglary need not be alleged in a capital murder indictment based upon the aggravating offense of burglary"). From this premise, the State

9

argues that because the indictment did not need to allege the constituent elements of the underlying offense of aggravated assault and because the language of the jury charge tracked that of the indictment, the application paragraph of the jury charge in this case was proper. *See Willis v. State*, 669 S.W.2d 728, 729 (Tex. Crim. App. 1984) (finding no fundamental error where "paragraph applying the law to the facts" tracked indictment).

However, none of the State's cases address the situation present here where the charge as presented to the jury contained instructions for one count of aggravated assault naming the victim of the offense and contained instructions in which aggravated assault served as the basis for felony murder but in which the victim of that aggravated assault was not identified. *See Livingston*, 542 S.W.2d at 657 (listing allegations as involving same victim); *Kitchens*, 279 S.W.3d at 735 (discussing indictment's single allegation against defendant); *Yandell*, 46 S.W.3d at 359 (noting that indictment had three paragraphs, "each accusing appellant of murdering Duarte under one of the three statutory forms of the offense"). Further, even though no victim for the predicate aggravated assault was identified in the felony-murder instructions, the remainder of the instructions for felony murder identified the murder victim as Marta, who was the same victim listed in the instructions for the stand-alone aggravated-assault offense. Additionally, the charge theoretically might have led members of the jury to decide that Holloway was guilty of felony murder after concluding that he committed the separate offense. *See Saenz v. State*, 451 S.W.3d 388, 391-92 (Tex. Crim. App. 2014) (determining that there was jury charge error where language "made it possible for the jurors to convict without agreeing that any one particular person was murdered by the appellant" and where there was no requirement in charge that jurors agree on specific murder serving as predicate murder); *see also Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010) (noting that "[n]othing prohibits a single capital

10

murder from containing alternate underlying offenses that are the same statutory offense but with different victims or different underlying methods of commission, so long as the same victim is alleged with respect to the predicate murder").

Even if the charge was erroneous, that would not be the end of the analysis. As set out above, because Holloway did not object, we would then have to determine whether Holloway suffered egregious harm from the error. On appeal, Holloway contends that he was harmed by the error because of differences in the state of the evidence pertaining to Danny and Marta. Specifically, Holloway highlights that there were inconsistencies between the eyewitnesses' testimony and the State's expert's testimony regarding whether he was driving forward or reversing when his truck struck Marta. Further, Holloway points to his own testimony in which he stated that he did not know where Marta went when she left the truck. Accordingly, Holloway contends that the jury's determinations about his conduct regarding Marta could have been "radically different than" those regarding "Danny, who was attacking him and his truck."

"Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "The purpose of the egregious-harm inquiry is to ascertain whether the defendant has incurred actual, not just theoretical, harm," *Swearingen*, 270 S.W.3d at 813, and "reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to" the defendant, *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). The determination depends "on the unique circumstances of" each case and "is factual in nature." *Saenz v. State*, 479 S.W.3d 939, 947 (Tex. App.—San Antonio 2015, pet. ref'd); *see Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002) (stating "that

11

egregious harm is a difficult standard" to meet). Neither side has the burden of establishing either the presence or a lack of harm. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Instead, the reviewing court makes "its own assessment" when evaluating what effect an error had on the verdict by looking at the record before it. *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000) (quoting Wayne R. LaFave & Jerold H. Israel, Criminal Procedure 1165 (2d ed. 1992)). In this type of analysis, reviewing courts "consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

Regarding the entirety of the charge, we note that nothing in the remainder of the charge repeats the alleged error Holloway identifies on appeal. When setting out the relevant law and setting out the instructions for the other alleged offenses, the charge specifies the victim for the other offenses. *Cf. Jones v. State*, No. 03-19-00797-CR, 2021 WL 3919391, at *6 (Tex. App.—Austin Sept. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (determining that entirety-of-jury-charge factor weighed in favor of no egregious harm in part because "the erroneous inclusion . . . was not compounded by any other mention . . . in the remainder of the charge").

Turning to the arguments of counsel, we note that the State emphasized in its opening statement that Holloway "ran over two people with his truck": Marta and Danny. Perhaps most importantly, in its closing argument, the State clarified the identity of the victim of the predicate offense for the felony-murder count by stating that the victim was "Danny." Along those same lines, the State later explained that the aggravated assault mentioned in the felony-

12

murder count "is not the aggravated assault of Marta" because "[t]he aggravated assault for purposes of felony murder is the assault of . . . Danny." Addressing the stand-alone aggravated-assault count identifying Marta as the victim, the State emphasized in its closing argument that this assault "is the aggravated assault of Marta . . . [n]ot of Danny." *See Campbell v. State*, 664 S.W.3d 240, 253 (Tex. Crim. App. 2022) (noting that State's argument "undoubtedly helped to remedy the alleged error in the charge"); *French v. State*, 563 S.W.3d 228, 238 (Tex. Crim. App. 2018) (explaining that State's closing arguments focused jury's attention in way that rendered charge error harmless); *Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (emphasizing "that jury arguments bear significantly on an *Almanza* analysis").

Moreover, nothing in the remainder of the record indicates that the State's explanation did not clarify any potential confusion. Although the jury did submit two questions to the trial court, neither of them addressed the identity of the victim for the aggravated assault serving as a basis for the felony-murder count or otherwise indicate that the jury was confused by that issue. *See Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd) (highlighting that "[t]here is no evidence the jury was confused about the instructions in the charge"); *see also Murrieta v. State*, 578 S.W.3d 552, 556 (Tex. App.—Texarkana 2019, no pet.) (noting that "the jury did not send any notes to the trial court regarding" jury instructions).

Regarding the state of the evidence, given the State's repeated explanation about the identity of the victim of the aggravated assault listed in the felony-murder count (Danny) and the victim of the stand-alone aggravated assault (Marta), we cannot conclude that the identified differences in the evidence pertaining to Marta and Danny could have resulted in Holloway suffering an actual—as opposed to a theoretical—injury. Further, the jury was presented with strong evidence establishing that Holloway was in the course of committing the offense of

13

aggravated assault of Danny when he committed an act clearly dangerous to human life (recklessly driving his truck) that caused Marta's death. *Cf. Campbell*, 664 S.W.3d at 252 (noting that state of evidence weighed against finding of harm where "State's case for guilt was exceedingly strong").

Given our resolution of the factors discussed above, we conclude that the alleged jury-charge error did not egregiously harm Holloway and, therefore, overrule his first issue on appeal.

**Mistake of Fact Instruction**

In his second issue on appeal, Holloway contends that the trial court erred by denying his request to include instructions for the defense of mistake of fact. As support for this argument, Holloway highlights the evidence indicating that Danny yelled at him and was beating the truck with a two-by-four. Further, Holloway emphasizes his testimony in which he stated that Marta got out of the truck, that he did not know where she was, that he did not see her outside the truck, and that he believed that she had left the area to get help. In addition, Holloway notes that in his testimony he explained that he heard noises when he struck Danny but did not hear any noises indicating that he hit Marta and that he did not learn that he struck Marta until he went to the police station. In light of this evidence, Holloway asserts that he was not obligated to stop and render aid if he did not know an accident had occurred with regard to Marta and, therefore, that the trial court should have granted his request on the defense of mistake of fact.

Section 550.021 of the Transportation Code is the failure-to-stop-and-render-aid statute and provides that if "[t]he operator of a vehicle [is] involved in an accident that results or

is reasonably likely to result in injury to or death of a person," the operator must stop his vehicle at the scene or as near to the scene as possible; return to the scene if the vehicle is not stopped at the scene; determine whether a person is involved in the accident and, if so, whether the person requires aid; and remain at the scene until the operator complies with the additional requirements of section 550.023. Tex. Transp. Code § 550.021(a). Section 550.023 provides that under those circumstances, the driver shall provide his name and address, his vehicle's registration number, and the name of his insurance carrier; show his driver's license if asked; and provide reasonable assistance. *Id.* § 550.023. "A person commits an offense if the person does not stop or does not comply with the requirements of" section 550.021. *Id.* § 550.021(c).

For section 550.021 to apply, it is not necessary "that the driver knew a person involved in the accident was injured or killed (although such proof will . . . suffice)." *Curry v. State*, 622 S.W.3d 302, 309 (Tex. Crim. App. 2019). A person commits the offense if "the driver knew that he was involved in an accident that was reasonably likely to injure or kill another person, if another person was involved." *Id.* "[A] driver does not have to stop and render aid if he does not know that he was involved in an accident, if he knows that he was involved in an accident and knows that it did not result in injury to or the death of a person, or if he knows that he was involved in an accident, but it was not reasonably likely that the accident would result in injury to or the death of another person." *Id.*

"It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." Tex. Penal Code § 8.02(a). Under the statute, "kind of culpability" refers to the "culpable mental state" needed for someone to be held criminally responsible. *Beggs v. State*, 597 S.W.2d 375, 378 (Tex. Crim. App. 1980); *see Celis v. State*, 416 S.W.3d 419,

15

430-31 (Tex. Crim. App. 2013). A defendant is entitled to a defensive instruction if the issue is raised by the evidence, even if that evidence is controverted or weak. *Allen*, 253 S.W.3d at 267; *see also Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (noting that issue can be "raised by a defendant's testimony alone or otherwise"). In determining whether the instruction was warranted, reviewing courts view the evidence in the light most favorable to the defense, *Curry*, 622 S.W.3d at 312, and take the defendant's mistaken belief as true for the purpose of deciding if it would negate the required culpable mental state, *see Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999). The defense rests on the defendant's mistaken belief, not the belief of others, and reviewing courts consider the conduct of others to the extent that the conduct contributes to the defendant's belief. *Flores v. State*, 573 S.W.3d 864, 868 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). For the offense of failure to stop and render aid, the question is whether there is evidence that the defendant "made a reasonable mistake in thinking that no one involved in the accident was injured or killed or in thinking that the accident was not reasonably likely to have injured or killed another person." *Curry*, 622 S.W.3d at 312.

As set out above and as pointed out by Holloway, he repeatedly testified that he did not know where Marta was after she got out of the truck, did not see her in the area, thought she likely left to get help, and did not hear anything indicating that his truck hit anyone other than Danny. Although the State acknowledges this evidence, the State contends that it was not necessary for him to know that he injured Marta; instead, the State argues that it was only necessary that Holloway knew that he was involved in an accident that did or was reasonably likely to have injured or killed *someone*. Further, the State argues that Holloway acknowledged in his own testimony that he knew that he was involved in an accident that resulted in the injury of someone (Danny) and further argues that it was unnecessary for him to learn that Marta was a

16

victim before the duty to stop was triggered. For those reasons, the State contends that "even if [Holloway] was mistaken about whether Marta was injured, he was not entitled to a mistake-of-fact instruction."

Whether the failure-to-stop-and-render-aid statute would allow for a conviction of a defendant in the circumstances asserted by the State—e.g. the defendant is accused of failing to stop and render aid to a victim even if the defendant did not know the victim had been involved in the accident because the defendant was aware that another victim had been involved in the accident and was aware that the accident was reasonably likely to have resulted in injury or death to the second victim—is not a question that can be decided here. The application section of the jury charge pertaining to failure to stop and render aid alleged only one accident involving one victim (Marta) and did not authorize the jury to consider whether anyone else was involved in an accident and was injured or killed or reasonably likely to have been injured or killed by the accident. *See Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (noting that application paragraph of jury charge is heart and soul of charge because it specifies circumstances under which jury should convict or acquit); *Thomas v. State*, 454 S.W.3d 660, 665 (Tex. App.—Texarkana 2014, pet. ref'd) (same).

Specifically, the jury charge directed the jury to find Holloway guilty if it found as follows:

> Holloway . . . did then and there intentionally and knowingly drive a vehicle that became involved in an accident that resulted in death to . . . Marta . . ., hereafter styled the complainant, and the defendant did thereafter, knowing the accident had occurred, intentionally and knowingly leave the scene of the accident, without giving his name, address, registration number of the vehicle the defendant was driving, or the name of the defendant's motor vehicle liability insurer to any person, and without rendering reasonable assistance to the complainant when it

17

was then apparent that the complainant was in need of medical treatment, and the accident resulted in the death of the complainant[.]

In light of the language of the jury charge and the nature of the charged offense and viewing the evidence in the light most favorable to the requested defense, *see Curry*, 622 S.W.3d at 312,[2] we conclude that the issue of mistake of fact was raised by the evidence and that Holloway was entitled to an instruction on that defense, *see Allen*, 253 S.W.3d at 267; *see also Granger*, 3 S.W.3d at 37, 41 (determining that defendant was entitled to instruction on mistake of fact where defendant told police that he did not know victim was in car when he shot at car); *Jackson v. State*, 646 S.W.2d 225, 226, 227 (Tex. Crim. App. 1983) (deciding that defendant was entitled to instruction on defense of mistake raised by defendant's testimony). Having determined that the jury charge should have included an instruction on the requested defense, we must now consider whether Holloway was harmed by the omission. As set out above, because Holloway requested the instruction, reversal is required if he suffered some harm. *See Ngo*, 175 S.W.3d at 743. In determining whether there is some harm, appellate courts utilize the same factors as they do when analyzing whether jury-charge error resulted in egregious

---

[2] Unlike the current case, *Curry v. State* addressed an accident involving a car and a bicycle with only one victim (the bicyclist). 622 S.W.3d 302, 304 (Tex. Crim. App. 2019). When deciding that an instruction on the defense of mistake of fact should have been given, the Court of Criminal Appeals used broadly worded language about whether the defendant had a reasonable mistake about whether "no one" was injured or killed in the accident or that the accident was not reasonably likely to have "injured or killed another person." *Id.* at 311. The State relies on this language and other similar statements when asserting that no instruction was warranted because Holloway knew that he was involved in a collision with Danny that was reasonably likely to kill or injure Danny. However, given that *Curry* involved a single victim, it is not entirely clear that the language relied on by the State supports its proposition. In any event, as set out above, whether the statute could authorize a conviction in the circumstances suggested by the State, the jury charge did not include language regarding that theory.

18

harm. *See Jenkins v. State*, 468 S.W.3d 656, 680 (Tex. App.—Houston [14th Dist.] 2015), *pet. dism'd, improvidently granted*, 520 S.W.3d 616 (Tex. Crim. App. 2017).

Nothing in the remainder of the charge suggested to the jury that it could consider the defense of mistake of fact when determining whether Holloway was guilty of the offense of failing to stop and render aid. On the contrary, the charge instructed the jury that it could not consider "legal principles not contained in this charge" and that it was bound by the charge provided. Moreover, as set out above, the defense of mistake of fact was raised by Holloway's testimony that he did not know that he struck Marta, and that testimony was consistent with some of the evidence presented at trial indicating that Marta was hit when the truck was traveling in reverse. If believed, the evidence would have negated his culpability for the charged crime. *See Curry*, 622 S.W.3d at 312. Although Holloway argued in his closing argument that he did not know that he hit Marta, neither side mentioned the defense of mistake of fact, and "mere jury argument cannot substitute for a charge that properly instructs the jury." *See Jenkins*, 468 S.W.3d at 681. Moreover, the trial court's refusal to provide the requested instruction prevented the jury from considering the statutory defense of mistake of fact even though the defense was raised by the evidence.

For these reasons, we conclude that the jury-charge error caused Holloway some harm and, therefore, sustain his second issue on appeal. *See Hill v. State*, 765 S.W.2d 794, 797-98 (Tex. Crim. App. 1989) (holding "that the trial court's refusal to give appellant's requested jury charge" applying "the law of mistake of fact to the facts of the case, caused appellant some harm").

19

**Report on Holloway's Blood-Alcohol Concentration**

In his third issue on appeal, Holloway contends that the trial court erred by overruling his relevancy objection and admitting into evidence Exhibit 100, which was a report showing that testing performed on a sample of his blood revealed that he had a blood-alcohol concentration of .109. In challenging the trial court's ruling, Holloway contends that the blood-alcohol results were not relevant because the sample used in the test was taken hours after the incident. Although Holloway agrees that the results "would have been material and relevant to the issues before the jury" if they could have been used to determine his blood-alcohol level at the time of the incident, he argues that the State's expert testifying about the report admitted that she could not extrapolate his blood-alcohol level at the time of the incident. Further, he asserts that the State's expert's testimony that he was in the elimination phase of alcohol absorption at the time of the testing did not make the report relevant because, according to him, "being in the elimination phase does not necessarily equate with intoxication at the scene of the alleged offenses." In addition, he urges that he was harmed by the admission of this evidence because the jury improperly relied on the report "to support a finding of intoxication."

Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and "[i]rrelevant evidence is not admissible." Tex. R. Evid. 402. Moreover, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." *Id.* R. 401. "To be relevant, evidence must be both material—that is, it must be offered for a proposition that is of consequence to the determination of the case—and probative, such that it makes the existence of the fact more or less probable than it would

20

otherwise be without the evidence." *Boudreaux v. State*, 631 S.W.3d 319, 332 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

Appellate courts review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

As an initial matter, we note that retrograde extrapolation is not required before blood-alcohol results may be admitted into evidence, particularly where, like in this case, there is other evidence indicating that a defendant was intoxicated at the time of the offense. *See Torres v. State*, 109 S.W.3d 602, 606 (Tex. App.—Fort Worth 2003, no pet.). In fact, although doing so in the context of a breath test, the Court of Criminal Appeals has expressly rejected the idea that alcohol-concentration results were "irrelevant without retrograde extrapolation evidence." *Stewart*, 129 S.W.3d at 96. On the contrary, the Court explained that the issue in that case was

21

whether the defendant was intoxicated when she drove and that the "test results tended to make it more probable that she was intoxicated at the time she drove under either definition of intoxication because they provided evidence that she had consumed alcohol." *Id.*

Although no evidence was introduced indicating that the defendant in *Stewart* drank alcohol between when the traffic stop started and when she submitted to testing and although Holloway claimed in this case that he drank alcohol after the incident, *see id.*, no evidence regarding Holloway's alleged subsequent drinking had been introduced by the time that the trial court ruled on the relevancy objection. *See Khoshayand*, 179 S.W.3d at 784. Moreover, prior to the trial court making its ruling, evidence had been introduced indicating that Holloway drove erratically and sped off after the incident, urinated on himself, smelled like alcohol, had slurred speech, had red eyes, and refused to perform field-sobriety tests. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (listing evidence that would "logically raise an inference that the defendant was intoxicated at the time of driving as well as at the time of the BAC test"); *see also id.* at 744, 745 (addressing issue of propriety of trial court's per se intoxication charge but explaining "that BAC-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication").

Regarding the delay, evidence was presented establishing that the incident occurred between 11:00 p.m. and 11:30 p.m. and that the subsequent blood draw occurred at 1:21 a.m. Accordingly, the delay between the incident and the blood draw was at most 141 minutes, and courts have determined that similar delays did not eliminate the probative value of the results. *See id.* at 746 (concerning delay of 80 minutes); *Gigliobianco v. State*, 210 S.W.3d 637, 639, 642 (Tex. Crim. App. 2006) (addressing ruling admitting breath-test results admitted

22

over Rule 403 objection and concluding that results made it more probable defendant was intoxicated "at the time he was driving" approximately 75 minutes before sample was collected); *Mechler*, 153 S.W.3d at 437, 440 (same for delay of approximately 90 minutes); *see also Guardiola v. State*, No. 03-08-00399-CR, 2010 WL 1170204, at *1 (Tex. App.—Austin Mar. 23, 2010, no pet.) (mem. op., not designated for publication) (noting that breath sample was collected 100 minutes after police responded to "the scene of a one-car collision," determining that test results were relevant, and explaining that "[t]he results of a test for alcohol concentration taken within a reasonable period of time after the defendant was driving and showing that he was above the legal limit are probative evidence of intoxication at the time of driving").

Accordingly, the trial court could have reasonably concluded that the blood-alcohol results were probative of whether he was intoxicated at the time of the incident, which was a fact of consequence. *See* Tex. Penal Code § 49.08; Tex. R. Evid. 401. For these reasons, we conclude that the trial court did not abuse its discretion by overruling Holloway's relevancy objection and admitting Exhibit 100 and, therefore, overrule his third issue on appeal.

**Questions by the State**

In his fourth issue on appeal, Holloway argues that the trial court erred by overruling his objection to an improper question by the State that he contends commented on his exercise of his right to remain silent. When presenting this issue, Holloway notes that he asked for an attorney when questioned by the police after he drove to the police station, which Holloway asserts invoked his right to remain silent. Further, Holloway emphasizes that there was a suppression hearing concerning the voluntariness of his statements to the police and that the trial court granted the motion to suppress, resulting in portions of the recordings from his

interaction with the police being muted when played at trial. Next, Holloway points to the following exchange during his testimony in which he asserts that, in light of the preceding, the State improperly commented on his right to remain silent by questioning him about whether he told anyone before testifying that day that he drank alcohol after the incident:

> [State]: So you have run two people over, killed two people and you decide after that is when you should drink alcohol?
>
> [Holloway]: I believe I was in shock.
>
> [State]: Would you agree with me today is the first time you've ever told that story in public?
>
> [Holloway's counsel]: Objection, Judge. Now she's attempting to comment on his right to remain silent.
>
> [Trial Court]: Sustained.
>
> [Holloway]: Do I answer it? No? Okay.
>
> [State]: If we can approach.
>
> (Off-the-record discussion held.)[3]
>
> [State]: Would you agree that today is the first time you've told the story about drinking in the parking lot?
>
> [Holloway's counsel]: Judge, I'd renew my objection about the comment on his right to remain silent.
>
> [Trial Court]: You may answer the question.
>
> [Holloway]: No, ma'am. I've told the same story that I've told right here for four years. 52 months I've told the same story because it is the truth.
>
> [State]: You told the police officers that you were drinking out in the parking lot; is that your testimony?
>
> [Holloway]: I don't believe they ever asked.

---

[3] The record does not identify the location of the off-the-record discussion.

24

[State]: My question was, is today the first time in public you have told anybody that you sat in the parking lot and got intoxicated there?

[Holloway]: No, ma'am. I've told the same story for 52 months that I've been here.

[State]: Did you tell the police officer --

[Holloway]: No.

[State]: -- that night?

[Holloway]: I couldn't talk that night. I was in shock. I could just get words out. I got [Danny], killed him. You know, I couldn't -- I was incoherent. I was freaked out. I was in shock. I just --

[Holloway's counsel]: Objection; nonresponsive, Judge.

[Trial Court]: Sustained.

[Holloway]: I just killed a man.

[Holloway's counsel]: Objection; nonresponsive, Judge.

[Trial Court]: Sustained.

[State]: Back to my original question. Is today the first time you have told that story in public about getting intoxicated in the parking lot?

[Holloway]: No, ma'am.

[State]: Did you tell the police officers you got intoxicated in the parking lot?

[Holloway]: They never asked.

[State]: Is that a yes or a no, sir?

[Holloway]: I'd say no.

[State]: In fact, you never mentioned drinking anything to the police officers, did you?

[Holloway]: I believe I did. I believe I told them I had two beers at the Starbuck.

[State]: But you failed to mention drinking in the parking lot, correct?

[Holloway]: They didn't ask. I just got beat with a two-by-four. I just killed a man. My mind is not right.

[Holloway's counsel]: I will object to the nonresponsive.

[Trial Court]: Sustained.

On appeal, Holloway contends that the State's questions violated his "right against self-incrimination by commenting on" his "post-arrest silence." Further, Holloway argues that by allowing the State to improperly question him about his invocation of the right to remain silent, the trial court allowed the State to imply that his failure to volunteer information about his drinking was a sign of his guilt and to undermine the veracity of his testimony that he drank when he arrived at the police station, which was inconsistent with the State's theory that he had been intoxicated at the time of the incident. Moreover, Holloway asserts that because no curative instruction was given, there can be no assurance that the error "did not contribute to [his] conviction or the severity of his punishment."

"Preservation of error is a systemic requirement." *Diruzzo v. State*, 581 S.W.3d 788, 797 (Tex. Crim. App. 2019). If an issue has not been preserved, an appellate court should not address the merits of the issue. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). A "defendant's right to remain silent and not have that silence used against him at trial is a forfeitable right. Consequently, a defendant must object in order to preserve complaints concerning the admission of evidence showing his pre-arrest and post-arrest silence." *Miller v. State*, 939 S.W.2d 681, 687-88 (Tex. App.—El Paso 1996, no pet.). If a defendant fails to pursue an objection to an adverse ruling, "he forfeits his right to complain on appeal about the argument." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim App. 2018). "Failure to request further relief after an objection is sustained preserves nothing for review." *Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Additionally, "[t]o preserve error for appellate review, counsel must object every time allegedly inadmissible testimony is offered." *Scaggs v. State*, 18 S.W.3d 277, 291 (Tex. App.—Austin 2000, pet. ref'd); *see also Bunton v. State*, 136 S.W.3d 355, 367 (Tex. App.—Austin 2004, pet. ref'd) (explaining that "[a] party must object each time inadmissible evidence is offered"). That general preservation requirement necessitating contemporaneous objections has two exceptions. *Scaggs*, 18 S.W.3d at 292. The first is found in Rule of Evidence 103, which specifies that if a trial "court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim for error on appeal." Tex. R. Evid. 103(b). The second is asking for and receiving a running objection to the evidence. *See Scaggs*, 18 S.W.3d at 292.

In this case, Holloway's first objection was sustained and preserved nothing for appellate review because he did not pursue the objection to an adverse ruling. *See Hernandez*, 538 S.W.3d at 622; *Caron*, 162 S.W.3d at 617. Subsequently, when the State attempted to ask a nearly identical question, Holloway's attorney again objected on the ground that the question was a comment on his right to remain silent, but the trial court told Holloway that he could answer the question. Following that exchange, the State then asked Holloway essentially the same question eight additional times without objections other than objections by Holloway's counsel asserting that Holloway's answers were not responsive to the State's questions, which were sustained. *Cf. Bunton*, 136 S.W.3d at 367 (explaining that "[e]ven if the trial court erred in overruling the hearsay objection, appellant failed to continue to object as the testimony unfolded").

Moreover, nothing in the record indicates that Holloway asked for and was given a running objection to the testimony or that a ruling on the admissibility of the testimony under

Rule 103 was made outside the presence of the jury. Although there was a bench conference during the exchange, that hearing was not transcribed, and "this court cannot conclude that appellant preserved error based upon speculation or supposition as to what may have occurred during a bench conference at which no record was made." *See Veras v. State*, 410 S.W.3d 354, 357-58 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Additionally, Holloway's objection following the bench conference indicates that Holloway understood the need to continue to object to this line of questioning.

On this record, we conclude that Holloway failed to preserve his issue challenging the State's questioning of him.[4] *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) (determining that defendant did not preserve issue for appellate review where he successfully objected to improper question about prior conviction but did not object when prosecutor rephrased question and elicited same evidence with next question). Accordingly, we overrule Holloway's fourth issue on appeal. *See Scaggs*, 18 S.W.3d at 291.

**Argument by the State**

In a related issue, Holloway asserts in his fifth issue that the trial court erred by overruling his objection to an allegedly improper argument by the State effectively commenting on his exercise of his right to remain silent. The State made the comments framing this issue near the end of its closing argument when it asserted as follows:

---

[4] Even if we found Holloway preserved error, we would not hold that the State's questioning was in error. It is undisputed that Holloway drove to the police station and gave a statement to the police immediately after the incident. The State's numerous questions were not an impermissible comment on his right not to incriminate himself, but rather an attempt to impeach by omission, as he did not include this information in his initial report. *See Anderson v. Charles*, 447 U.S. 404, 408 (1980) (explaining that although due process may "bar[] the use against a criminal defendant of silence maintained," it "does not apply to cross-examination that merely inquires into prior inconsistent statements").

28

The Defendant tells you he was the one who had the board when Danny got ran over. Here's what's interesting. You get to decide, are witnesses telling the truth or is this something somebody's made up four years later, after they know what all the evidence is to try to explain it away? The Defendant's testimony was he told the police officer I had two beers. Well, that doesn't explain a .10. So today, for the first time in public he says, I was drinking in the parking lot. Did you see how that came out even? Not while his lawyer was asking him questions about what you had to drink. But only when I started asking questions.

And he did it again, too. When we're talking about how he blacked out at the scene. Well, did he? Because State's Exhibit 75, the EMS records, tells us that he denied that and said that he didn't, and that he didn't have head pain and he didn't need any help and he didn't need medical attention. Does it sound like he's embellishing a little bit, kind of making it up as he goes along to try to explain how it went down? You get to decide those. You decide who's telling the truth and who's not. But what you do know is what he said that night and what he told you for the first time today are two different things.

In his brief, Holloway contends that he objected to the State's "first time" argument as being an impermissible comment on his right to remain silent and that the trial court overruled the objection.

However, Holloway did not object to the comments that are the subject of his fifth issue. Although Holloway objected during the State's closing that the State had "comment[ed] on his right to remain silent," he made that objection before the allegedly improper comments at issue and made the objection in response to the following argument by the State regarding Holloway's failure to submit to a breath test:

You heard about the smell, the urination, the red eyes, the speech, the balance. You also heard from that the officers tried to give him a chance to do the test, to blow in the machine. Heck, do you want to give us some blood? And what does he say? No. Why? Because he's intoxicated and he doesn't want you to know it. Why? Because he can now sit here and say, well, you just don't know what --

To preserve for appellate review an issue regarding improper jury argument, a defendant must object and pursue the objection to an adverse ruling. *See Mays v. State*,

318 S.W.3d 368, 394 (Tex. Crim. App. 2010); *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); Tex. R. App. P. 33.1(a). A defendant must contemporaneously object to the statement, request an instruction that the jury disregard the statement if the objection is sustained, and move for a mistrial if an instruction to disregard is given. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). Further, if an "objection at trial does not comport with the complaint raised on appeal," the appellate issue was not preserved for consideration. *Guevara v. State*, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003).

If a defendant fails to object to a jury argument or to pursue an adverse ruling to his objection to the jury argument, he loses the right to complain about the jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). This is true even if the jury argument error was such that it could not be cured by an instruction, *see Hernandez*, 538 S.W.3d at 622-23; *Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002), and if the argument commented on the right to remain silent, *see Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004) (applying that concept to argument regarding defendant's failure to testify); *see also Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014) (explaining that except for absolute and waivable only rights, "all errors—even constitutional errors—may be forfeited on appeal if an appellant failed to object at trial"); *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994) (noting that defendant's rights, including those based on constitutional grounds, are usually forfeited by failure to exercise them).

Because Holloway failed to object at trial to the argument that he now alleges was improper, he lost his right to complain about the allegedly improper argument on appeal. Accordingly, we overrule Holloway's fifth issue on appeal.

**Mistrial**

In his final issue on appeal, Holloway argues that the trial court erred by denying his motion for a mistrial. When presenting this issue, Holloway highlights that during the testimony of one of the investigating police officers, the following exchange occurred:

> [State]: So while you were outside, you did not see it?
>
> [Officer]: No, no, no.
>
> [State]: And then could you smell anything?
>
> [Officer]: Smelled alcohol. Smelled a very strong odor of alcohol.
>
> [State]: Does this person tell you -- the defendant tell you about something that has happened?
>
> [Officer]: He just -- he just used some profanity and said his life was over, that he was on parole --
>
> [Holloway's counsel]: Objection.
>
> [Holloway's second counsel]: Objection, Your Honor.
>
> [Trial Court]: All right. Ladies and gentlemen, I'm going to instruct you to disregard the statement that this witness has just made with regard to the situation with regard to the defendant. Disregard it for all purposes. I know you can't remove it from your mind, but disregard it.

Following this exchange, Holloway moved for a mistrial on the ground that the officer's comment about his parole status was prejudicial and lacked probative value. The trial court denied the motion. On appeal, Holloway contends that the trial court erred by denying the motion because the parole comment "was particularly egregious" and "inflammatory in the extreme." More specifically, Holloway argues that it improperly undermined his credibility, which he contends was particularly problematic in this case because the State's case rested "on

31

whether the jury believed Holloway or the opinion[s] of a reconstructionist" and witnesses who observed the events from far away.

To preserve an issue regarding the denial of a motion for mistrial, "a motion must be both timely and specific." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). "A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Id.*; *see Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (explaining that "the party could no more rely on the untimely motion for mistrial than on an untimely objection"). When a party delays in moving for a mistrial, "the motion for mistrial is untimely and preserves nothing for appellate review." *See Veras*, 410 S.W.3d at 358.

In this case, the grounds for the motion for mistrial first became apparent during the officer's testimony. However, Holloway did not move for a mistrial until after both that officer and another witness finished testifying, and Holloway did not provide any explanation regarding the delay in moving for a mistrial. Under similar circumstances, the Court of Criminal Appeals determined that because the grounds for the defendant's motion for mistrial were apparent during a witness's testimony and because the defendant did not move for a mistrial until after the next witness finished testifying, the motion "was untimely and failed to preserve his complaint for appellate review." *See Griggs*, 213 S.W.3d at 927; *see also Bryant v. State*, No. 13-21-00230-CR, 2023 WL 2182423, at *17 (Tex. App.—Corpus Christi-Edinburg Feb. 23, 2023, pet. ref'd) (mem. op., not designated for publication) (determining that motion for mistrial was not timely because it was not made until "two questions past the complained-of testimony").

In light of the preceding, we conclude that Holloway's motion for mistrial was untimely and did not preserve anything for appellate review. In any event, as set out above, the trial court instructed the jury to disregard the parole comment by the officer, and nothing in the

record before this Court indicates that the instruction was insufficient to cure any harm caused by the comment. *See Strong v. State*, 739 S.W.2d 506, 508 (Tex. App.—Fort Worth 1987) (concluding that trial court's instruction to disregard cured any harm from witness's statement that defendant was on parole), *aff'd on other grounds*, 773 S.W.2d 543 (Tex. Crim. App. 1989); *see also Young v. State*, 591 S.W.3d 579, 596 (Tex. App.—Austin 2019, pet. ref'd) (noting that appellate courts presume that jury followed trial court's instruction to disregard); *Salas v. State*, No. 13-15-00070-CR, 2015 WL 5136966, at *4 (Tex. App.—Corpus Christi-Edinburg Aug. 31, 2015, no pet.) (mem. op., not designated for publication) (determining that instruction to disregard testimony about defendant's being on parole cured any harm for several reasons, including that testimony was not "emotionally inflammatory," that testimony was volunteered and not elicited by State, and that parole was not mentioned again); *Ludwig v. State*, 428 S.W.3d 344, 350 (Tex. App.—Amarillo 2014, no pet.) (explaining that "a prompt instruction to disregard the testimony at issue . . . ordinarily will cure any prejudice arising from the testimony").

Accordingly, we overrule Holloway's sixth issue on appeal.

**Error in the Judgment for Aggravated Assault**

In its brief, the State observes that there is an error in the trial court's written judgment for aggravated assault. Specifically, the State contends that a deadly-weapon finding was made regarding the aggravated-assault count but that the written judgment of conviction does not include the finding. Accordingly, the State asserts that the trial court's written judgment of conviction for the aggravated-assault count should be modified to include a deadly-weapon finding.

This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). When a judgment and sentence improperly reflect the findings of the trier of fact, the proper remedy is to reform the judgment. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The trier of fact is responsible for making the finding regarding the use or exhibition of a deadly weapon. *See Patterson v. State*, 950 S.W.2d 196, 198 (Tex. App.—Dallas 1997, pet. ref'd).

If the jury is the trier of fact, it must make the deadly-weapon finding. *See id.* "On an affirmative finding regarding the use or exhibition of a deadly weapon . . . , the trial court shall enter the finding in the judgment of the court." Tex. Code Crim. Proc. art. 42A.054. A jury can make an express affirmative deadly weapon finding in the following three ways: "(1) by finding the defendant guilty as charged in the indictment if the indictment alleges use of a deadly weapon, (2) by finding the defendant guilty as charged in the indictment if the indictment names a weapon that is a deadly weapon per se, or (3) by making an affirmative finding to a special issue on use of a deadly weapon." *See Patterson*, 950 S.W.2d at 198.

The portion of the indictment regarding the offense of aggravated assault alleged that Holloway "did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle, during the commission of said assault." The jury charge contained similar instructions for the aggravated-assault count, and the jury's verdict specified that the jury found "beyond a reasonable doubt that . . . Holloway . . . is guilty of the offense of aggravated assault as charged in Count IV of the indictment."

In light of the preceding, we conclude that the jury made an express finding on the use or exhibition of a deadly weapon and that the "N/A" finding in the written judgment was,

34

therefore, error. *See Ford v. State*, No. 05-00-01139-CR, 2002 WL 240036, at *8 (Tex. App.—Dallas Feb. 20, 2002, no pet.) (op., not designated for publication).

## CONCLUSION

Having sustained Holloway's second issue on appeal, having overruled the remainder of his issues, and having found error requiring modification in the trial court's written judgment of conviction for aggravated assault, we modify the trial court's judgment of conviction for aggravated assault to include a deadly-weapon finding, affirm the aggravated-assault conviction as modified, affirm the trial court's judgments of conviction for felony murder and intoxication manslaughter, reverse the trial court's judgment of conviction for failure to stop and render aid, and remand the case for further proceedings regarding that charge consistent with this opinion.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, Smith

Affirmed in Part; Reversed and Remanded in Part, Modified in Part, and as Modified, Affirmed

Filed:   August 4, 2023

Do Not Publish